IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIE H. JONES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 07 C 5546 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

For the reasons set forth below, petitioner Willie H. Jones' "Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" under 28 U.S.C. § 2255 (Dkt. No. 1) is denied.

BACKGROUND

On September 18, 2003, a criminal indictment was returned against Willie H. Jones ("Jones"), charging Jones with four counts of distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1). On November 14, 2003, after a three-day trial, a jury convicted Jones on all four counts. The court then sentenced Jones to a term of 168 months' imprisonment, with 8 years of supervised release, a $2,000 fine, and a $400 special assessment.[1] On appeal, Jones argued that he was entitled to have a jury determine beyond a reasonable doubt the drug

---

[1] On December 16, 2008, this court granted Jones' "Motion to Reduce Sentence," based on the November 1, 2007 amendment to the crack cocaine guidelines. Accordingly, the court reduced Jones' sentence to 140 months. (03 CR 0799; Dkt. No. 103.) This reduction does not moot Jones' § 2255 motion, as Jones' pending motion addresses the question of whether Jones' counsel was constitutionally ineffective in not objecting to Jones' prison attire during his trial.

1

quantities on which his sentence was based. The Seventh Circuit affirmed Jones' sentence, as well as the court's determination of drug quantities under a preponderance of the evidence standard. *United States v. Willie H. Jones*, 187 Fed. App'x 654 (7th Cir. July 31, 2006). Jones timely filed his § 2255 motion on October 1, 2007, within one year from the expiration of the time period for petitioning the U.S. Supreme Court for *certiorari*.

## LEGAL STANDARD

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). If the court finds that the sentence was imposed in violation of the petitioner's constitutional rights, the court must vacate and set aside the judgment and discharge the petitioner, resentence the petitioner, grant a new trial, or correct the sentence. 28 U.S.C. § 2255(b).

In this case, Jones argues that he was deprived of his constitutional right to the effective assistance of counsel, when his trial counsel failed to secure Jones with civilian clothes to wear during his jury trial.[2]  Although this argument was not raised on direct appeal, "an ineffective assistance of counsel claim may be raised for the first time in a § 2255 proceeding." *Torzala v. United States*, 545 F.3d 517, 524 (7th Cir. 2008) (citing *Massaro v. United States*, 538 U.S. 500, 509 (2003)).

---

[2] Initially, Jones also argued that his appellate counsel was ineffective for not raising the clothing issue on direct appeal, and that his trial counsel was ineffective for failing to subpoena a key witness. Jones has voluntarily withdrawn these claims in his reply brief. (Pet.'s Reply at 3.)

To prevail on a claim of ineffective assistance of counsel, a defendant must show that: (1) the attorney's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 695 (1984). "*Strickland*'s 'reasonable probability' language does not require a petitioner to meet a preponderance of the evidence threshold, but it does require a petitioner to show 'a probability sufficient to undermine confidence in the outcome.'" *Porter v. Gramley*, 122 F.3d 351, 353 (7th Cir. 1997) (quoting *Strickland*, 466 U.S. at 694)).

ANALYSIS

1.  Performance

For purposes of this analysis only, the court accepts as true the allegations set forth in the affidavits of Jones and his wife (attached to Jones' reply brief and on file with the court).[3]

Prior to his trial date, Jones spoke to his wife, Latoria Payton ("Payton") on the phone and requested that she provide Jones with suitable civilian clothing to wear during the trial. (Jones Aff. ¶ 2; Payton Aff. ¶¶ 2-3.) When Jones discovered that Payton would be unable to provide the clothing in advance of trial, he informed his attorney, Eugene Steingold ("Steingold"), that he wished to postpone the trial date until Jones was able to obtain civilian clothing. (Jones Aff. ¶¶ 3, 5.) Steingold told Jones that he would not ask the court for a postponement, stating that "it really doesn't matter" whether Jones appeared in prison garb or civilian clothes. (*Id.* ¶ 6.) Steingold further noted that, if Payton could not provide Jones with

---

[3] Because the court has accepted Jones' version of the facts regarding his ineffective assistance of counsel claim, no evidentiary hearing is required to resolve any disputed questions of fact in relation to Jones' motion.

suitable clothing prior to the trial date, Jones would have to proceed to trial in his jail garb. (*Id.*) Payton was not able to procure civilian clothing for Jones, and Jones attended the trial in his prison attire.

On the first day of the trial, Jones told the court he was dissatisfied with his trial counsel for not filing "certain motions" and that he [Jones] wanted "another date to come back." (11/12/03 Tr. at 3, 14 (Ex. 3 to Pet.'s Reply).) Jones also was visibly tugging on his prison jump suit, causing the court to note "Mr. Jones, you keep grabbing your jump suit. Is there something wrong with it?" to which Jones responded "No, sir." (*Id.* at 26.) It is undisputed that neither Jones nor Steingold notified the court of Jones' desire to appear in civilian clothing. Jones argues that his lawyer should have objected on the record, sought a continuance, or provided Jones with suitable clothing for trial.

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). Accordingly, "an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system." *Id.* at 504. The right not to be compelled to attend trial in jail garb is not absolute, however, and a defendant who does not object to his prison attire cannot argue that he was unconstitutionally compelled to stand trial before a jury wearing identifiable prison clothing. *Whitman v. Bartow*, 434 F.3d 968, 970-71 (7th Cir. 2006) (citing *Estelle*, 425 U.S. at 512-13). In this manner, the right not to be compelled to stand trial in prison garb is not "a fundamental right," but instead is a strategic and tactical decision with constitutional implications. *Estelle*, 425 U.S. at 508 n.3.

4

Jones told his attorney prior to trial that he objected to being tried in his prison attire; nevertheless, Steingold remained silent before the court, thus effecting a waiver of this aspect of Jones' constitutional right to a fair trial. Steingold also told Jones that "it really doesn't matter" whether Jones was to be tried in civilian clothing or prison attire. This statement reflects a failure to grasp the constitutional significance of Jones' request. Furthermore, it appears highly unlikely that Steingold's silence was the result of a strategic decision to elicit sympathy from the jury, as no such strategy was discussed with Jones, and Jones had expressed to Steingold his desire to proceed in civilian attire. *Cf. Estelle*, 425 U.S. at 508 ("it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury"). In light of Jones' stated desires, Steingold had a duty to at least consult with Jones as to Jones' various options for moving forward. *See* ABA Standards for Criminal Justice, Prosecution Function and Defense Function, Standard 4-5.2 (3d ed. 1993) ("[s]trategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate"); *see also Strickland*, 466 U.S. at 688 ("Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable, but they are only guides."). Under the circumstances described by Jones, this court finds Steingold's performance to have been objectively unreasonable.

2.  Prejudice

Although the court has found in favor of Jones on his argument regarding Steingold's performance, Jones also bears the burden of demonstrating a reasonable probability that, but for the deficient performance of counsel, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 693-94. Jones directs his prejudice argument at Count IV of the

5

indictment. It is Jones' contention that his appearance in prison garb unfairly affected his conviction on Count IV, because Count IV was "far from containing overwhelming evidence of guilt." (Pet.'s Reply at 7.) The court disagrees.

In a different procedural context, this court has held that the outcome of Jones' trial would not have been different if Jones was tried in civilian clothes "because of the magnitude of the evidence against him." (4/14/2005 Tr. 25:22–26:4.) While the court's ruling on Jones' motion for a new trial was not specific to Count IV, it necessarily encompassed each of the counts for which Jones has been convicted. For the sake of completeness, the court takes this opportunity to further explain its earlier ruling as it relates to Count IV.

Count IV of the indictment charged Jones with knowingly and intentionally distributing more than five grams of a mixture containing cocaine base on September 11, 2002. Similarly, Counts I, II and III charged Jones with distribution of a controlled substance on April 17, 2002, May 2, 2002, and May 17, 2002, respectively. At Jones' trial, Detective Dan Raysby, of the DuPage County Sheriff's Office, testified as to Jones' involvement in each of these transactions. The court summarizes Detective Raysby's testimony as follows:

> On April 17, 2002, Detective Raysby (who was working undercover) and a confidential informant approached Jones on the sidewalk outside the Bradford Court Apartment Complex in Addison, Illinois. Detective Raysby asked Jones where he could buy $20 worth of crack cocaine, and Jones directed Detective Raysby to meet with an individual inside the 938 College building. Detective Raysby and the confidential informant went inside, where Detective Raysby purchased two $20-amounts of crack cocaine, and the confidential informant purchased one $20-amount of crack cocaine. On the way out of the building, Detective Raysby and the confidential informant again spoke with Jones. Jones handed the confidential informant a piece of paper with a telephone number on it. The confidential informant then handed the piece of paper to Detective Raysby and indicated to Jones that "Danny" might be calling Jones in the future.
>
> On two subsequent occasions, Detective Raysby called the phone number Jones had

given to the confidential informant, arranging controlled buys of crack cocaine from Jones on May 2, 2002 and on May 17, 2002, in an Amoco parking lot in Addison, Illinois.

Detective Raysby also testified that, on September 11, 2002, he arranged to buy crack cocaine from Laquette Reed ("Reed")—another subject from whom he had been buying crack cocaine during his investigation of the Bradford Court Apartment Complex. Reed told Detective Raysby that he was planning to bail out a friend at DuPage County Jail that day, and Detective Raysby learned that friend was Jones. Minutes after bonding out Jones at the DuPage County Jail, Reed met Detective Raysby in the parking lot of a McDonald's restaurant. Reed pulled into the parking lot in his SUV, the passenger window was then rolled down, and Detective Raysby observed Jones sitting in the passenger seat of Reed's vehicle. Detective Raysby approached the SUV, at which point Jones handed Detective Raysby a plastic bag of crack cocaine through the open window. Detective Raysby then reached across Jones to hand $1,000 to Reed. At that time, Detective Raysby complained to Reed that Reed had brought Jones along, noting that Jones believed Detective Raysby was a cop. Detective Raysby then went around to the driver's side of Reed's SUV to talk to Reed directly.

Detective Robert Toerpe, of the DuPage County Sheriff's Office, and Detective Joseph Maranowicz, of the Addison Police Department, also testified at trial, describing the surveillance they each provided during the September 11, 2002, transaction and generally corroborating the details set forth by Detective Raysby. The government introduced photographs of the September 11, 2002 exchange (showing Detective Raysby talking to Reed at the driver's side of Reed's SUV), as well as an audio recording of the September 11, 2002 transaction. Forensic scientist Claire Donaghey, of the DuPage County Sheriff's Office Crime Laboratory, testified as to her analysis of the weight (47.37 grams) and composition (cocaine base) of the controlled substance purchased by Detective Raysby on September 11, 2002, and the drugs themselves were admitted into evidence. A fingerprint expert also testified that he found no latent fingerprints on the plastic bags used to package the drugs in the September 11, 2002 transaction. Finally, the government introduced the bond documents from DuPage County Jail, where Jones was released

7

on September 11, 2002.

"These facts were not affected by [Jones'] appearance before the jury in identifiable prison clothing." *Whitman*, 434 F.3d at 972. Jones notes that there was no direct evidence presented at trial that Jones "knew or saw what was in the bag handed to Mr. Raysby" on September 11, 2002. (Pet.'s Reply at 7.) To the extent the jury was required to infer that Jones knew he was transacting a drug deal involving a controlled substance on September 11, 2002, (*see* Jury Instructions at 15, 03 CR 799, Dkt. No. 34), this inference is well supported by the evidence produced at trial. In his pending motion, Jones does not challenge the jury's determination that Jones sold Detective Raysby crack cocaine on three prior occasions. The September 11, 2002, transaction shared many similarities with these earlier transactions, including the buyer (Detective Raysby), the setting (a parking lot), the packaging (a plastic bag), and the in-person exchange of a package in return for money. In light of all the evidence produced at trial, the court finds the evidence of Jones' guilt in relation to Count IV to have been overwhelming, and the court is satisfied that Jones' attire "was not an outcome determinative factor in the jury's decision." *Whitman*, 434 F.3d at 972.

## CONCLUSION

Because Jones has not demonstrated prejudice in relation to his counsel's failure to adequately address Jones' concerns about proceeding to trial wearing his prison garb, Jones' "Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" under 28 U.S.C. § 2255 (Dkt. No. 1) is denied.

ENTER:

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: December 24, 2008